LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILBERD SALDIVAR, *on behalf of himself, FLSA Collective Plaintiffs and the Class,*<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>DHY SONAMOO LLC,<br>　　　d/b/a KEY FOOD,<br>55 FULTON MARKET INC.<br>　　　d/b/a FULTON MARKET BY KEY FOOD,<br>OPEN MARKET 15 INC.<br>　　　d/b/a OPEN MARKET,<br>SNL MEAT & PRODUCE CORP<br>　　　d/b/a KEY FOOD,<br>RED APPLE TREE INC.<br>　　　d/b/a KEY FOOD, and<br>YEONG SHIM<br><br>　　　　　　　Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, WILBERD SALDIVAR ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorney, hereby files this Class and Collective Action Complaint against Defendants DHY SONAMOO LLC, d/b/a KEY FOOD, 55 FULTON MARKET INC., d/b/a FULTON MARKET BY KEY FOOD, OPEN MARKET 15 INC., d/b/a OPEN MARKET, SNL MEAT & PRODUCE CORP, d/b/a KEY FOOD, RED APPLE TREE INC., d/b/a KEY FOOD (collectively, "Corporate Defendants"), and YEONG SHIM ("Individual

Defendant," and together with Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime, due to time-shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving, (2) unpaid spread of hour premiums; (3) unpaid call-in pay premiums, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff WILBERD SALDIVAR is a resident of Kings County, New York.

6.      Corporate Defendant DHY SONAMOO INC.  is a domestic business corporation organized under the laws of New York State, with a principal place of business and address for service of process located at 95-30 Church Avenue, Brooklyn, NY, 11212.

7.      Corporate Defendant 55 FULTON MARKET INC. is a domestic business corporation organized under the laws of New York State with a principal place of business and address for service of process located at 55 Fulton St, New York, NY, 10038.

8.      Corporate Defendant OPEN MARKET 15 INC. is a domestic business corporation organized under the laws of New York State with a principal place of business and address for service of process located at 15 Williams St, New York, NY, 10005.

9.      Corporate Defendant SNL MEAT & PRODUCE CORP. is a domestic business corporation organized under the laws of New York State with a principal place of business and address for service of process located at 599 Ave Z, Brooklyn, NY, 11223.

10.     Corporate Defendant RED APPLE TREE INC. is a domestic business corporation organized under the laws of New York State with a principal place of business located at 169 Atlantic Ave, Brooklyn, NY 11201 and address for service of process located at P.O. Box 1144, 3 Allison Rd, Alpine, NJ, 07620.

11.     Individual Defendant YEONG SHIM is the owner of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant YEONG SHIM exercises -- and also delegates to managers and supervisors -- the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff. Individual Defendant YEONG SHIM has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff. Individual Defendant YEONG SHIM additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff. Individual Defendant YEONG SHIM ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

3

12. The Defendants collectively own and operate a series of grocery stores at five (5) locations in New York City under the following trade names:

    i. Key Food, 9530 Church Ave, Brooklyn, NY, 11212 ("Key Food Church");

    ii. Fulton Market by Key Food, 55 Fulton St, New York, NY 10038 ("Fulton Market");

    iii. Open Market 15, 15 William St, New York, NY 10005 ("Open Market");

    iv. Key Food, 169 Atlantic Ave, Brooklyn, NY 11201 ("Key Food 169"); and

    v. Key Food, 599 Ave Z, Brooklyn, NY 11223 ("Key Food 599").

(the "Grocery Stores").

13. Defendants operate the Grocery Stores through the Corporate Defendants 55 FULTON MARKET INC., OPEN MARKET 15 INC., SNL MEAT & PRODUCE CORP, RED APPLE TREE INC., and DHY SONAMOO INC. as a single integrated enterprise. Specifically, the Grocery Stores are engaged in related activities, share common ownership and management, and have a common business purpose. The Grocery Stores are jointly owned and controlled by Individual Defendant YEONG SHIM. Individual Defendant owns and hold executive positions across all of the entities and have the power to make binding decisions for the entities.

14. The Grocery Stores all share a similar inventory with a focus on fresh produce, have a larger area for pre-prepared food set out "buffet style," and have a similar theme and advertising.

15. At all relevant times, Defendants utilized centralized labor, scheduling, and payroll systems which allowed Defendants' employees to work across all of the Grocery Stores and to be compensated for all work at all Grocery Store locations in one combined payment.

16. Defendants regularly transfer supplies, products, and staff between all stores.

17. Defendants' Grocery Stores share: (i) common ownership by Individual Defendant,

4

(ii) an interrelation of operations as shown through the exchange of employees, supplies, and products between the Grocery Stores, and (iii) identical pay and labor policies across all locations.

18.     Defendants also maintain centralized operations for purchasing, marketing, and hiring. Across all Grocery Store locations, the various store owners hire employees, distribute promotional materials, purchase products, and negotiate collectively with suppliers.

19.     Defendants' Grocery Stores share an adequate number of commonalities and purposes that clearly classifies them as a "single integrated enterprise".

20.     At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

21.     At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

22.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

23.     Although Plaintiff did not work at all the Grocery Stores, the Grocery Stores are appropriately named in this Complaint through the relevant Corporate Defendants described above. Moreover, because of the shared ownership and management of the Grocery Stores by the Individual Defendant, the Grocery Stores share the same illegal wage and hour policies. The Grocery Stores and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the Plaintiff and Class Members for whom Plaintiff seeks to represent.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt current and former employees of Defendants, (including but not limited to produce department employees, cashiers, stock persons,

price coordinators, counter employees, janitors, porters, and baggers) employed by Defendants on or after the date that is six (6) years and 228 days (pursuant to NY's Executive Order tolling during the COVID pandemic) before the filing of the Complaint ("FLSA Collective Plaintiffs").

25.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them for all hours worked, including the overtime thereof, due to a policy of timeshaving, as required under the FLSA. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

26.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 ALLEGATIONS

27.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt current and former employees of Defendants, (including but not limited to produce department employees, cashiers, stock persons, price coordinators, counter employees, janitors, porters, and baggers) employed by Defendants at Defendants' Grocery Stores on or after the date that is six (6) years and 228 days (pursuant to NY's Executive Order tolling during the COVID pandemic) before the filing of the Complaint (the "Class" or "Class Members").

28. The Class Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

29. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. Plaintiff is a member of the Class.

30. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants': (1) failure to pay wages and overtime due to time-shaving, (2) failure to pay spread-of-hours premiums, (3) failure to pay call-in pay premiums, (4) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the NYLL, and (5) failure to provide proper wage and hour statements, per requirements of the NYLL.

31. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

32.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

33.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

34.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

35.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a) Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL;

(b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

(c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

(d) Whether Defendants properly compensated Plaintiff and Class Members their overtime rates at one-and-one-half-times their base hourly rates for all hours worked in excess of forty (40) each workweek under the NYLL;

(e) Whether Defendants failed to properly compensate Plaintiff and Class Members for all of their hours worked due to their policy of timeshaving;

(f) Whether Defendants paid Plaintiff and Class Members spread of hour premiums for days worked with a spread of more than ten (10) hours;

(g) Whether Defendants paid Plaintiff and Class Members their owed call-in pay

premiums;

(h) Whether Defendants provided proper wage and hour notices to employees, including, among others, the rate of compensation and trade name of employer, pursuant to the requirements of the NYLL; and

(i) Whether Defendants provided proper wage statements to employees as required under the NYLL.

## STATEMENT OF FACTS

### *Wage and Hour Claims:*

36.    Plaintiff WILBERD SALDIVAR was hired by Defendants in or around December 7, 2025 to work as a produce department employee at Defendants' Key Food located at 9530 Church Ave, Brooklyn, NY 11212. Plaintiff's employment was terminated on around March 9, 2026.

37.    From in or around December 7, 2025 to in or around February 2026, Plaintiff was scheduled to work five (5) days per week, Monday, Tuesday, Thursday, Saturday, and Sunday, from 10:00 a.m. to 6:00 p.m. for a total of forty (40) hours per week. Throughout this time, Plaintiff was compensated at $16.50 per hour.

38.    From in or around February 2026 to the end of his employment on or around March 9, 2026, Plaintiff was scheduled to work Monday through Saturday from 8:00 a.m. to 4:00 p.m. for a total of forty-eight (48) hours per week. Throughout this time, Plaintiff was compensated at $17.00 per hour.

39.    Throughout his employment, Plaintiff was regularly required to work one (1) to two (2) hours past his scheduled shift each day and keep working off-the-clock. Defendants did not compensate Plaintiff for the hours he worked past the scheduled shift. As a result, Plaintiff was

10

not compensated for approximately twelve (12) hours of work per week. Because Plaintiff's scheduled shifts covered at least forty (40) hours, all unpaid time was overtime. FLSA Collective Plaintiffs and Class Members were also required to stay past their scheduled shifts and keep working off-the-clock without getting compensated for the post-shift hours worked.

40. Plaintiff was required to arrive fifteen (15) minutes before his scheduled shift every day. Plaintiff was not compensated for at least ninety (90) minutes of work per week for pre-shift time. FLSA Collective Plaintiffs, and Class Members were similarly required to arrive and start working before their scheduled shift every day and were not compensated for those hours.

41. At all relevant times, Plaintiff was unable to take a free and clear one (1) hour meal break as he was forced to work through his breaks on a daily basis. Despite being required to work through his meal breaks, Defendants still implemented an automatic meal break deduction of an hour every day. Thus, because Defendants deducted the meal breaks from Plaintiff's compensable hours even when he was working, he was not compensated for at least two (2) hours each week due to this policy.

42. Similarly, FLSA Collective Plaintiffs and Class Members were also required to work during their meal breaks. However, their meal break was deducted from their compensable hours even if they were working through it. As a result, Defendants time shaved Plaintiff, FLSA Collective Plaintiffs, and Class Members one (1) hour each shift they were required to work through their meal break because of this policy.

43. Defendants' timeshaving policy was clearly intentional, as Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to clock in and out for every regularly scheduled shift and required them to work through meal breaks. When Plaintiff was asked to stay for overtime, Defendants knew when Plaintiff, FLSA Collective Plaintiffs, and Class Members

11

were working off-the-clock. However, when time came to pay their employees, Defendants intentionally shaved off all hours beyond scheduled shifts and automatically deducted one hour from their compensable hours every day for the purported meal break.

44.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class Members their proper wages for all hours worked due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

45.    At all relevant times, Plaintiff was compensated by check. FLSA Collective Plaintiffs and Class Members were similarly paid both by check.

### *Unpaid Spread of Hours Premiums Claims*

46.    At all relevant times, Defendants intentionally and willfully subjected Plaintiff and Class Members to a policy of failing to pay them spread of hours premiums for their days worked with a spread of more than ten (10) hours, in violation of the NYLL.

47.    Plaintiff worked shifts of longer than 10 hours on a frequent basis, since his regular shifts were eight (8) hours a day, and he was required by Defendants to keep working one (1) to two (2) hours on a daily basis. Plaintiff was never paid any spread of hour premiums for the days which he worked a spread of more than ten (10) hours.

48.    Similarly, Class Members were regularly required by Defendants to work shifts with a spread of more than ten (10) hours. Despite requiring Plaintiff and Class Members to shifts with a spread of ten (10) or more hours, Defendants always failed to pay spread of hours premiums to Plaintiff and Class Members for such shifts.

49.    Defendants' failure to pay spread of hours premiums to Plaintiff and Class Members were clearly intentional. Defendants knew Plaintiff and Class Members were working shifts lasting up to ten (10) or more hours because Defendants were the ones to assign their

12

schedules and workloads. Despite this, Defendants intentionally disregarded their requirement to pay spread of hours premiums to Plaintiff and Class Members for these shifts.

### *Call-In Pay Claims*

50.     At all relevant times, Defendants failed to pay call-in pay premiums to Plaintiff and Class Members for all their instances of reporting to work for a scheduled shift which lasted less than four (4) hours, in violation of the NYLL. New York's call-in pay regulation provides: "An employee who by request or permission of the employer reports for work on any day shall be paid for at least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly wage." 12 NYCRR § 142-2.3.

51.     Plaintiff and Class Members were frequently sent home early without the appropriate call-in pay premiums. The NYLL requires that if an employer cancels a scheduled shift the day-of or sends an employee home before they work at least four hours, then that employee is entitled to the difference between four hours of pay and the time that they actually worked. While employed by Defendants, Plaintiff and Class Members were regularly sent home early or had their shifts cancelled on the same day. This was usually done as part of an effort by management to prevent too many people from reaching overtime hours in a given week although Plaintiff and Class Members were also cut early or even upon arrival if traffic was really slow on a particular day.

52.     However, Defendants failed to pay Plaintiff and Class Members their owed call-in pay premiums for every workday lasting less than four (4) hours.

53.     Defendants knowingly and willfully operated their business with a policy of sending Plaintiff and Class Members home early or cancelling their shifts entirely without paying the proper call-in premiums.

***WTPA Claims:***

54.    At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL.

55.    At all relevant times, Defendants paid failed to provide any paystubs to Plaintiff and Class Members with every weekly payment.

56.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

57.    New York Court continue to find sufficient standing to support standing to support these claims.  One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, \*61 (S.D.N.Y. February 23, 2026) (internal citations removed).

58.    Here, Defendants' conduct is has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that

14

they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Subclass members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

59.     By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

60.     Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving.  Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to

15

take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

61. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members their proper wages, including overtime, due to timeshaving.

62. Defendants knowingly and willfully operated their business with a policy of failing to pay spread of hour premiums to Plaintiff and Class Members for days worked with a spread of ten (10) or more hours.

63. Defendants knowingly and willfully operated their business with a policy of failing to pay call-in pay premiums to Plaintiff and Class Members.

64. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

65. Defendant knowingly and willfully operated their business with a policy of failing to provide Plaintiff with wage notices and accurate wage statements, in violation of the NYLL.

66. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIMS

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

67. Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if

16

fully set forth herein.

68.     At all relevant times, upon information and belief, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

69.     At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

70.     Upon information and belief, at all relevant times Corporate Defendants had gross revenues in excess of $500,000.

71.     At all relevant times, Defendants had a policy and practice of failing to pay wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all regular and overtime hours worked due to illegal time-shaving.

72.     Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff, are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

73.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked.

74.     Defendants failed to properly disclose or apprise Plaintiff, FLSA Collective Plaintiffs and Class Members of their rights under the FLSA.

75.     As a direct and proximate result of Defendants' willful disregard of the FLSA,

Plaintiff, FLSA Collective Plaintiffs and Class Members are entitled to recover liquidated damages pursuant to the FLSA.

76.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff, FLSA Collective Plaintiffs and Class Members suffered damages in an amount not presently ascertainable of unpaid wages plus an equal amount as liquidated damages.

77.    Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

78.    Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

79.    At all relevant times, Plaintiff was employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

80.    Defendants willfully violated the rights of Plaintiffs and Class Members by failing to pay them the proper compensation for all hours worked due to a policy of time-shaving.

81.    Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours for days worked with a spread of ten (10) or more hours.

82.    Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them call-in pay premiums for shifts that were cancelled or from which they were sent home early.

83.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage notice at date of hiring and annually thereafter, as required under the NYLL.

18

84.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under the NYLL. Defendants are required to provide an itemized listing of deductions take on each wage statement. Defendants failed to satisfy the requirements under the NYLL because the wage statements did not include all hours Plaintiff and Class Members worked.

85.     Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, including overtime, due to timeshaving, unpaid wages, unpaid spread-of-hours premiums, unpaid call-in pay premiums, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to the NYLL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant relief as follows:

a.  A preliminary and permanent injunction to prohibit Defendants from violating the FLSA and NYLL;

b.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

c.  Appropriate equitable and injunctive relief to remedy Defendants' violations of federal law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

d.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

19

e.  An award of unpaid wages, including overtime, due to time shaving under the FLSA and the NYLL;

f.  An award of unpaid spread of hour premiums due under the NYLL;

g.  An award of unpaid call-in pay premiums for shifts lasting less than three hours, due under the NYLL;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages to the FLSA and the NYLL;

i.  An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under the NYLL;

j.  An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorney's and expert fees and statutory penalties;

k.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l.  Designation of this action as a class action pursuant to F.R.C.P. 23;

m.  Designation of Plaintiff as Representative of the Class; and

n.  Such other and further relief as this Court deems just and proper.


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable as of right by jury.

Respectfully submitted,

Dated: August 7, 2026
         New York, NY

By: ___*/s/ C.K. Lee*_____

C.K. Lee, Esq.
LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)

20

148 W 24th St., 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and Class Members*

21